**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**RANDY L. J.,**

**Plaintiff,**

    **v.**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

**Defendant**.

**Case No. 1:19-cv-1565-TPK**

**OPINION AND ORDER**

## OPINION AND ORDER

Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security.  That final decision, issued by the Appeals Council on September 24, 2019, denied Plaintiff's applications for disability insurance benefits and supplemental security income.  Plaintiff has now moved for judgment on the pleadings (Doc. 8), and the Commissioner has filed a similar motion (Doc. 14).  For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and direct the Clerk to enter judgment in favor of the Defendant.

### I.  BACKGROUND

In November, 2016, Plaintiff protectively filed his applications for benefits, alleging that he had been disabled since June 1, 2013.  After initial administrative denials of his claim, Plaintiff appeared at an administrative hearing held on April 25, 2019.  Both Plaintiff and a vocational expert, Toni McFarland, testified at that hearing.

The Administrative Law Judge issued an unfavorable decision on August 15, 2019.  He first concluded that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2016 and that he had not engaged in substantial gainful activity since his alleged onset date.  Next, he found that Plaintiff suffered from severe impairments including obesity, bilateral osteoarthritis of the knees, torn meniscus and chondromalcia of the left knee, history of simple partial seizure, and right ankle degenerative joint disease.  He further determined that these impairments, viewed singly or in combination, were not of the severity necessary to qualify for disability under the Listing of Impairments.

Moving on to the next step of the inquiry, the ALJ found that Plaintiff had the residual functional capacity to perform a limited range of light work.  He could stand and walk a combined four hours in a workday and could occasionally climb ramps or stairs, but never ladders, ropes, or scaffolds.  He could also frequently reach to the left (but never overhead) and

handle, finger and feel objects bilaterally.  He could only occasionally balance and stoop and could never kneel, crawl, or work in environments with excessive vibration or exposure to hazards such as unprotected heights or moving machinery.  Finally, he could do a job where being off task for 5% of the workday was permitted, but he could not do a job that required driving a vehicle.

Plaintiff's past relevant work included the jobs of collector and supervisor.  According to the testimony of the vocational expert, a person with Plaintiff's residual functional capacity could still perform those jobs, and the ALJ so found.  Alternatively, the ALJ concluded that Plaintiff could do other jobs which existed in significant numbers in the national economy such as information clerk, office helper, and inspector.  The ALJ therefore concluded that Plaintiff was not under a disability as defined in the Social Security Act.

Plaintiff, in his motion for judgment, asserts a single claim.  He argues that "the ALJ failed to evaluate NP Steeprock's treating source opinion in accordance with the correct legal standard warranting remand."  *See* Doc. 8, at 1.

## II.  THE KEY EVIDENCE

The Court will begin its review of the evidence by summarizing the testimony from the administrative hearing.  It will then provide a summary of the most important medical records.

At the hearing, Plaintiff first testified that he was 55 years old, was slightly over six feet tall, and weighed 278 pounds.  He did not have a valid driver's license and said his doctor had recommended that he stop driving due to side effects of his medications.  He had completed some college work but did not obtain a degree.  He lived in a one-bedroom apartment and his income consisted of a disability award from the Veterans' Administration and food stamps.  He had not worked full-time in many years but did spend the summer of 2014 working as a teacher's aide.

Describing his past work, Plaintiff said he had been a debt collector, a job which required sitting and doing paperwork, and a plumber on the Seneca Nation reservation.  Before that, he had been a guard at a casino for a short period of time and then moved into surveillance work, eventually becoming a shift supervisor at the casino.  Plaintiff lost his last job because the company for which he worked went out of business.  However, he said that he was unable to work because of pain in his knees and associated swelling and numbness in his feet.  As a result, he could not sit for more than half an hour without changing positions.  He had undergone surgery on his left knee in 2017 and obtained relief for about six months before the pain returned.  He could stand for ten minutes before needing to sit down but sometimes he ran a vacuum cleaner for 30 minutes.  He was able to carry groceries into his home but could not lift his left arm overhead.  Plaintiff said he had issues with his grip as well and sometimes had hand tremors.

Plaintiff also testified about lapses in concentration, which caused him to get angry.  He

said his sleeping had improved with medication.  He was seeing a psychiatrist and had also gone to counseling for a year and a half.  Plaintiff experienced anxiety as well and did not do well in crowds.  He had been diagnosed with PTSD in 2015.  His service-connected disability related to a shoulder injury he suffered while in boot camp, and he also had an ankle injury which was not treated properly and, in his view, led to his knee problems.

The vocational expert, Ms. McFarland, classified Plaintiff's past job as a collector semiskilled and as light as typically performed but sedentary as actually performed.  His plumbing job, which she described as a plumber's apprentice, was heavy or very heavy and skilled.  The casino jobs of guard, surveillance security monitor, and supervisor were either sedentary or light as typically performed, and the last of these three jobs was skilled.

The expert was then asked questions about a hypothetical person with Plaintiff's vocational profile who could do a limited range of light work with a number of postural and environmental restrictions.  She responded that such a person could do the collector or supervisor jobs and also the guard job, but could not be a plumber's apprentice.  He or she could also work as a cashier, inspector and hand packager, and garment sorter.  Adding a mild restriction in handling and fingering would not change her answer, but if the person could not reach overhead with the left arm, the guard position would be eliminated.  When asked about the impact of a restriction on walking and standing to four hours total in a workday, Ms. McFarland testified that the two past jobs could still be done but not some of the other jobs she identified.  However, such a person could do light jobs like information clerk or office helper as well as inspector and hand packager.  All of those jobs could be done by someone who could not drive and who would be off-task for 5% of the day, but not by someone who would miss two days of work per month, needed special supervision, or had to take a 15-minute break every hour.

The pertinent medical records show the following.  A 2015 treatment note contains a diagnosis of osteoarthritis in the left knee, as shown on an x-ray report.  That condition had not responded well to an injection and anti-inflammatories were prescribed.  In the same year he was diagnosed with PTSD and his GAF was rated at 55, with medication having been prescribed.  At that time, he was also abusing alcohol.  The medications seemed to reduce his symptoms, including difficulty sleeping.  Later notes also reflect a diagnosis of major depression.  Plaintiff continued with mental health counseling into 2016 and was generally described as having no issues with memory or concentration.  He also stopped drinking.  A 2016 note showed a torn meniscus in the right knee as well as osteoarthritis, and he reported chronic pain in both knees and his left shoulder.  In February, 2017, he underwent surgery to repair a left knee medial meniscus tear.  The discharge note also stated that he had degenerative disease in that knee.

Dr. Ransom, a psychologist, performed a consultative psychiatric examination on May 19, 2017.  Plaintiff reported that his PTSD symptoms were in remission due to medication and treatment.  Dr. Ransom did not think his psychological condition would interfere with his ability to function in the workplace. (Tr. 828-31).  An internal medicine examination was also done that day by Dr. Brauer, a consultative examiner, and he reported that Plaintiff suffered from a long history of bilateral knee pain as well as chronic right ankle pain.  He also developed left

shoulder pain in the 1980s and had chronic right hp pain which he attributed to bursitis.  Plaintiff said that he cooked occasionally and did cleaning and laundry on a weekly basis.  On examination, Plaintiff had full range of motion in all his joints.  Dr. Brauer diagnosed chronic bilateral knee pain, right ankle pain, left shoulder pain, and right hip pain as well as diabetes, high cholesterol, and PTSD.  He saw no limits in Plaintiff's ability to sit, stand, and walk but thought that his knee pain limited his ability to squat, kneel, or climb stairs on a repetitive basis. (Tr. 833-37).

Plaintiff continued to receive treatment through the Seneca Nation Health System, and there are many pages of treatment notes in the record.  Rebecca Salerno, a physician's assistant, completed a form on June 24, 2017, stating that Plaintiff was being seen for degenerative joint disease, substance abuse disorder, and diabetes, among other ailments, and that he was moderately limited in his ability to walk, stand, lift, carry, climb stairs, and function in a work setting at a consistent pace.  (Tr. 868-69).  Another of the health care professionals who treated him was Shelley Steeprock, a nurse practitioner.  She completed a physical capacity assessment form on December 6, 2018, noting that she had been providing treatment to him for 14 months on an every-three-months basis.  In her opinion, he suffered from chronic pain in his knees, hips, and shoulder which restricted his range of motion.  He also experienced depression, anxiety, and symptoms of PTSD.  She believed his impairments would frequently interfere with his ability to concentrate but said he could perform a low-stress job.  However, she did not think he was capable of the physical exertion needed for full-time employment, being able to sit for only thirty minutes at a time and stand for only 15 minutes at a time, and do either activity for no more than two hours in a workday.  Additionally, he needed to be able to change positions at will and to take a 15-minute break every hour.  She did not think he could do any fine manipulation, said that he would miss more than four days of work per month, and concluded that he could not sustain full-time employment.  (Tr. 1035-39).

Dr. Nikita Dave did both a consultative orthopedic and consultative neurological examination on June 1, 2019.  Those two reports analyzed both Plaintiff's joint pain and his complaints of seizures and tremors.  The examination revealed some restriction in Plaintiff's range of motion and some mild muscle atrophy in the right foot.  Dr. Dave concluded that Plaintiff should avoid ladders, heights, and sharp equipment and machinery and that he had mild limitations in repetitive squatting, crouching, climbing, prolonged sitting, and walking, and possibly more severe limitations in lifting and carrying as well as fine hearing acuity.  That conclusion translated into Plaintiff's being unable to walk and stand more than four hours total in a workday although he could sit for eight hours.  (Tr. 1120-43).

Lastly, a state agency non-examining reviewer, Dr. Feldman, expressed an opinion about Plaintiff's physical functioning.  Dr. Feldman concluded that Plaintiff had no exertional limitations but did have some postural limitations in the areas of climbing, kneeling, bending at the knees, and crawling.

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

 "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV. DISCUSSION

As noted above, Plaintiff has made only a single claim of error.  Nurse Practitioner Steeprock completed a form which indicated restrictions incompatible with working.  Plaintiff argues that the ALJ did not apply the correct legal standard when analyzing this opinion and that the case needs to be remanded for additional proceedings.  The Court will begin its analysis of this issue by setting out in some detail the ALJ's rationale for discounting that opinion.

The ALJ began his residual functional capacity determination by reviewing and weighing Plaintiff's testimony about his symptoms.  He did not find that testimony entirely compatible with the objective evidence.  For example, he discounted the testimony about foot pain because Plaintiff had not received significant treatment for that condition, and he concluded that Plaintiff's knee pain was not as debilitating as Plaintiff claimed, noting that examination of his knees was relatively normal and his condition had been described as mild.  Additionally, his gait was typically normal, he needed no assistance in getting on and off the examination table, he walked for exercise without a limp, he did not pursue physical therapy, and he was not being actively followed by an orthopedist.  He also engaged in daily activities requiring "finger dexterity, reaching, lifting, carrying, walking, standing, pushing, pulling, and performing

postural maneuvers."  (Tr. 29).

Next, the ALJ reviewed the various medical opinions.  After crediting the opinions which addressed Plaintiff's mental functioning and which concluded that Plaintiff did not have any severe mental impairments, he turned to the opinion evidence dealing with Plaintiff's physical limitations.  The ALJ gave great weight to Dr. Feldman's assessment as consistent with the evidence, although he imposed additional limitations due to Plaintiff's longstanding report of joint pain.  He also gave great weight to Dr. Dave's conclusions about Plaintiff's ability to walk and stand for four hours in a workday.  The ALJ attributed lesser weight to Dr. Brauer's opinion, again adding limitations based on credible allegations of pain.  He then turned to Nurse Steeprock's functional limitation form, and said this:

> I give little weight to the opinion of Nurse Practitioner Shelley Steeprock.... Nurse Steeprock's opinion is completed on a check-box type form without significant explanation.  Her opinion is inconsistent with the medical evidence. For example, Nurse Steeprock opines that the claimant can never perform fine manipulation.  Yet, the claimant's tremors were significantly improved with the administration of Dilantin and the claimant displayed the ability to perform fine manipulative tasks one (sic) examination in June 2019....  Nurse Steeprock's opinion is also internally inconsistent.  For example, Nurse Steeprock limits the claimant to less than two hours of walking in an eight-hour workday but that he can walk without an assistive device and occasionally lift and carry ten pounds.

(Tr. 30).

Plaintiff takes issue with this analysis for these reasons.  He notes that under applicable case law, the opinion of a nurse practitioner must be evaluated using the same criteria which are used to analyze other medical opinions.  According to Plaintiff, the case law suggests that rejecting any medical opinion because it is expressed on a "check the box" form is problematic, especially where the medical record contains treatment notes supporting the opinion.  As an alternative, Plaintiff contends that the ALJ could have contacted Nurse Steeprock for a narrative opinion had he been unclear about the bases for her conclusions.  Plaintiff further notes that the opinion is consistent with Plaintiff's description of his symptoms and limitations, and he argues that the example of internal inconsistency contained in the ALJ's opinion does not support his conclusion that the opinion is self-contradictory.  Since the specific reasons given by the ALJ are insufficient to support his decision to give little weight to the opinion, and because the only other proffered reason - that the opinion is inconsistent with the medical evidence - is far too conclusory, Plaintiff requests a remand.

The Commissioner makes the following counterarguments.  First, the Commissioner notes that a nurse practitioner is not an acceptable medical source under the applicable regulations and that an ALJ therefore has broad discretion to decide how much weight to give such opinions.  Second, the Commissioner points to specific inconsistencies between the opinion and the record, as, for example, in the area of fine manipulation.  Third, the Commissioner

observes that most of the treatment notes prepared by Nurse Steeprock deal with Plaintiff's diabetes and not his degenerative joint disease.  The Commissioner also argues that the ALJ acted within his discretion when he gave greater weight to the opinions of Drs. Dave and Feldman, both of which contradict significant portions of Nurse Steeprock's conclusions.

Addressing the issue of the "check the box" form first, this Court has recently said that

it has been well-recognized that "the usefulness of [a check box] form should be determined by deciding whether the medical opinion expressed is relevant to a determination of disability and then assessing what basis the provider would have in deciding which box to 'check.' " *Czerniak v. Berryhill*, No. 17-CV-6123 (JWF), 2018 WL 3383410, at *3 (W.D.N.Y. July 11, 2018); *see also Garcia Medina v. Comm'r of Soc. Sec.*, No. 17-CV-6793-JWF, 2019 WL 1230081, at *3 (W.D.N.Y. Mar. 15, 2019) (the opinion of a treating physician who had a lengthy course of relationship with plaintiff could not be discredited because it was in the form of a check box opinion).

*Misty D. v. Comm'r of Soc. Sec.*, 2021 WL 1731700, at *4 (W.D.N.Y. May 3, 2021).  The mere fact that Nurse Steeprock's conclusions appear on such a form is therefore not a sound basis for discounting her opinion.

The ALJ also discounted it based on inconsistencies, however.  The one external inconsistency he noted is a valid one; Plaintiff did demonstrate adequate dexterity during examinations, in contrast to what Ms. Steeprock had to say about his ability to perform fine manipulation.  The alleged internal inconsistency is, however, as Plaintiff contends, not particularly probative.  A person can certainly both walk without an assistive device and be limited in the amount of time he or she can walk due to pain.  And it is also true that the general statement that the opinion is not consistent with the evidence is not particularly helpful since it lacks any specific reference to those portions of the evidence which contradict or fail to support the opinion.  If the opinion came from an acceptable medical source who qualified as a treating physician, such a statement would be far too conclusory to permit adequate review.  *See, e.g., Brianne S. v. Comm'r of Soc. Sec.*, 2021 WL 856909, at *5 (W.D.N.Y. Mar. 8, 2021) ("Where an ALJ 'merely states' that an examining physician's opinion is 'not consistent with[ ] the overall medical evidence,' he has failed to adequately explain his conclusions regarding the consistency factor"), *quoting Cuevas v. Comm'r of Soc. Sec.*, 2021 WL 363682 (S.D.N.Y. Jan. 29, 2021).

However, Nurse Steeprock is not a treating physician.  While it is true that the ALJ was required to evaluate her opinion using the same factors which apply to opinions from other medical sources - including consistency with the record, supportability, the existence of a longitudinal treating relationship, and whether other opinion evidence points to a different conclusion, *see* SSR 06-3p (now rescinded) - he was not required to give it any special deference, nor did he have to articulate his reasoning for discounting it in the same detail as he would for an acceptable medical treating source.  *See, e.g., Wynn v. Comm'r of Soc. Sec.* 342 F.Supp.3d 340 (W.D.N.Y. 2018).  The underlying question raised by Plaintiff's claim of error is,

therefore, whether the evidence supports the ALJ's conclusion that the opinions of other experts, who were not, admittedly, treating sources, were to be preferred over that of Nurse Steeprock.

Although the ALJ relied in part on reasons for rejecting this opinion which were either not supported by the record or too general to be evaluated, the Court nonetheless finds that his overall residual functional capacity is supported by substantial evidence in the record. Nurse Steeprock's opinions as to Plaintiff's mental functional capacity clearly conflicted with the opinions of mental health professionals (which she is not) and find little support in the record, which showed that Plaintiff responded well to treatment. Her physical capacity opinions do not find much support in the treatment notes, particularly the ones she authored, nor did they comport with what any other medical source had to say. Plaintiff's argument that her opinions were consistent with Plaintiff's hearing testimony overlooks the fact that the ALJ did not accept that testimony in full, and Plaintiff has not challenged the ALJ's credibility finding. Further, the ALJ, in his discussion of Plaintiff's testimony, did review the medical evidence and explain how the relatively normal findings in the record supported a greater ability to function than Plaintiff (and Nurse Steeprock) indicated.

Here, the ALJ did provide good reasons for giving significant weight to both the consultative and non-examining physician's opinions, and also for imposing additional restrictions based on Plaintiff's long-standing complaints of pain, which were not reflected in those opinions. Overall, the ALJ's reconciliation of the various competing opinions is consistent with the record even if he did not articulate a particularly strong basis for discounting Nurse Steeprock's opinion. That being so, the Court finds no basis upon which to order a remand.

## V. CONCLUSION AND ORDER

For the reasons set forth in this Opinion and Order, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 8), **GRANTS** the Commissioner's motion (Doc. 14), and directs the Clerk to enter judgment in favor of the Defendant.

/s/ Terence P. Kemp
**United States Magistrate Judge**